

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LAURA S. WASSMER AND STEPHEN B. HOPPER, | § § | |
| | | No. 08-12-00331-CV |
| Appellants, | § | Appeal from the |
| v. | § | Probate Court Number Three |
| JO N. HOPPER, | § | of Dallas County, Texas |
| Appellee/Cross-Appellant. | § | (TC#PR-11-3238-3) |

## **O P I N I O N**

Stephen Hopper, Laura Wassmer and their stepmother Jo Hopper bring cross appeals from a summary judgment in a probate proceeding. The decedent, Max Hopper, married Jo Hopper in 1981. During the marriage, they purchased a home on Robledo Drive which they occupied until Max's death on January 25, 2010. Max died intestate. The couple had no children. Max's two children by a prior marriage, Stephen Hopper and Laura Wassmer, were his only heirs. JPMorgan Chase Bank, N.A. was appointed to serve as independent administrator of the estate. At the time of Max's death, the community estate approached $26,000,000. We caution here that the community "estate" is not the same thing as the decedent's "estate," which would be half of that amount, or $13,000,000. While the issues presented are voluminous, the dispute may be

drilled down to whether the heirs can force their stepmother to "buy out" their interest in Robledo[1] to avoid being "unfairly burdened" by Jo's constitutional homestead. As she suggests in her brief, this was a perfect storm.

*Procedural Background*

Jo filed suit seeking declaratory relief against her stepchildren and Chase. A flurry of filings followed. The heirs sought declaratory relief against their stepmother and Chase while Chase sought a declaratory judgment against Jo. Thereafter, Jo and the heirs filed competing motions for partial summary judgment seeking certain declarations. Simply stated, Jo sought the following declarations:

(1) That Robledo was community property;

(2) That immediately upon Max's death, Jo retained in fee simple title her undivided one-half community interest in Robledo while Max's undivided one-half community interest in the home passed to his children;

(3) That since Robledo was the community homestead, and since Jo elected to maintain the house as her constitutional homestead, she has the exclusive right of use and possession and that the children's interest is subject to her exclusive rights;

(4) That Robledo is not subject to administration, and may not be partitioned as long as Jo maintains it as her constitutional homestead;

(5) That Chase shall not offset Jo's share of the assets being administered by any value attributable to her right of sole use and possession of Robledo and any tangible personal property in connection therewith as a matter of law;

(6) That Jo is entitled to exclusive use, possession and enjoyment of Robledo without interference from the heirs or Chase for the remainder of her life, or until she ceases to occupy the homestead and has affirmatively and deliberately abandoned it;

---

[1] The record suggests that the fair market value of Robledo is nearly $2,000,000.

2

(7) That Jo has not sought a non-pro rata partition of community property as set forth in § 385 of the Texas Probate Code, nor has she sought a partition of Robledo;

(8) That neither Chase nor the court may partition Robledo between Jo and the estate or the heirs whether under § 380 of the Texas Probate Code or otherwise, without Jo's consent as long as it remains her constitutional homestead, until she either dies or voluntarily abandons the property.

The heirs sought the following declarations:

(l) Chase must seek a partition and distribution of the estate under Texas Probate Code Section 150, since the heirs and their stepmother have not agreed upon distribution of the assets;

(2) A partition of the estate under Section 150 includes the entire community property estate subject to administration and is not limited to a partition of Max's separate property and his one-half interest in community property;

(3) The partition of the entire community property estate subject to administration must include Robledo, and the party that does not receive Robledo should receive assets equal in value to the full fair market value of Robledo;

(4) In the partition and distribution of the estate under Section 150, Robledo should be distributed to Jo, and assets of equal value should be distributed to the heirs; and

(5) The partition of Robledo should be decided in the context of all estate assets that were to have been partitioned and distributed under Texas Probate Code Section 150, and the heirs may not be prejudiced by the Bank's prior unlawful distributions of estate assets.

On January 31, 2012, the court heard the competing motions and entered partial summary judgment orders. At the hearing, counsel for Chase stated, "I'm not sure we need to be here on the issues that are before the Court, but we're here anyway." The heirs' counsel pointed out that Chase did not have a summary judgment motion pending before the court.

On February 14, 2012, the court entered orders granting and denying declaratory relief, including declarations not specifically requested by the summary judgment motions. It granted Issue

3

Numbers One, Six, and Seven of Jo's motion for partial summary judgment (Robledo was community property; Jo is entitled to exclusive use, possession and enjoyment of Robledo for the remainder of her life, or until she moves or abandons it; and that Jo has not sought partition). The court denied the remainder of the relief Jo sought. It granted Issue Numbers Two and Three in the heirs pleadings (a partition of the estate includes the entire community property estate subject to administration and is not limited to a partition of Max's separate property and his one-half interest in community property; the partition must include Robledo and the party not receiving Robledo should receive assets equal to its fair market value). The court denied the remainder of the relief sought by the heirs. It further declared that Chase may distribute Robledo in undivided interests subject to Jo's homestead rights; that Chase may require the return of some community property previously distributed ("clawback") if circumstances warranted it; that the return of distributions would be at Chase's discretion; and that the distributions that had already been made were not "unlawful."

On April 13, 2012, the court heard motions for reconsideration, new trial, clarification, and, alternatively, severance. And on May 18, it entered orders on summary judgment in which the court again granted Issue Numbers One, Six, and Seven of Jo's motion for partial summary judgment (Robledo was community property; Jo is entitled to exclusive use, possession and enjoyment of Robledo for the remainder of her life, or until she moves or abandons it; and that Jo has not sought partition) and denied the remainder of the relief she had sought. This time, it denied all of the relief sought by the heirs.[2] It declared that Chase could distribute Robledo in

---

[2] This ruling is admittedly confusing. Jo filed responsive pleadings suggesting that the effect of the court's remedy was to grant much of her motion for summary judgment, deny other portions, and at the same time deny each and

4

undivided interests subject to Jo's homestead rights and the outstanding mortgage, "to-wit 50% to Jo N. Hopper and 25% each to Decedent's two [heirs]." Finally, it reiterated its declarations with regard to Chase.

More filings ensued and on August 15, 2012, the court entered a second revised summary judgment order granting essentially the same relief previously granted. In a separate order, it set out additional declarations:

> (1) That the parties would share the expenses of casualty insurance on Robledo, with Jo paying one half and Stephen and Laura each paying one fourth.
>
> (2) That the parties would all be included on the insurance policies and pay for same in the proportion of ownership, with due regard for Jo's homestead rights.

The court granted severance with regard to Chase's claims. This appeal proceeds with regard to the heirs' appeal and Jo's cross-appeal.

## HOMESTEAD RIGHTS

The Texas Constitution provides:

> On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same.

TEX. CONST. art. XVI, § 52. These constitutional provisions are also embodied in Texas Probate Code Sections 283 and 284. TEX. PROB. CODE ANN. § 283 (When a decedent leaves a surviving

---

every one of the heirs requested declarations which appeared, from the heirs perspective, to leave the back door open for a renewed claim for partition of Robledo under Texas Probate Code Section 149B. In other words, the denial of Jo's Issue Numbers Two, Three, Four, Five and Eight coupled was inconsistent with the denial of all five of the heirs' issues.

5

spouse, the homestead shall descend and vest in like manner as other real property of the deceased and shall be governed by the same laws of descent and distribution.);[3] TEX. PROB. CODE ANN. § 284 (homestead shall not be partitioned among the heirs of the deceased during the lifetime of the surviving spouse, or so long as the survivor elects to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased is permitted, under a court order).[4]

When a spouse dies intestate, if a child of the deceased spouse survives and is not a child of the surviving spouse, one-half of the community estate is retained by the surviving spouse, the other one-half passes to the deceased spouse's children or descendants, and the community estate passes charged with the debts against it. *See* TEX. PROB. CODE ANN. § 45(b).[5] The term "estate" encompasses the real and personal property of a decedent. *See* TEX. PROB. CODE ANN. § 3(l); TEX. GOV'T CODE ANN. § 311.005(4) (West 2013).[6] At the time of Max's death, the Probate Code provided that upon the creation of an independent administration of a decedent's estate, the entry of the order appointing the independent executor, the filing of an inventory, appraisement,

---

[3] Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 283, sec. 283, 1955 Tex. Gen. Laws 88, 168, (S.B. 97), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502). Current version at TEX. ESTATES CODE ANN. § 102.003 (West 2014). All references to this statute are to this version unless noted otherwise.

[4] Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 284, sec. 284, 1955 Tex. Gen. Laws 88, 168, (S.B. 97), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502). Current version at TEX. ESTATES CODE ANN. § 102.005 (West 2014). All references to this statute are to this version unless noted otherwise.

[5] Act of May 28, 1993, 73rd Leg., R.S., ch. 846, § 33, sec. 45(b), 1993 Tex. Gen. Laws 3337, 3351, (H.B. 1200), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502). Current version at TEX. ESTATES CODE ANN. § 201.003(c) (West 2014). All references to this statute are to this version unless noted otherwise.

[6] Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 3, sec. 3, 1955 Tex. Gen. Laws 88, 90, (S.B. 97), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502). Current version at TEX. ESTATES CODE ANN. § 22.012 (West 2014). All references to this statute are to this version unless noted otherwise.

and list thereof by the executor and approved by the county court, and the filing of claims filed by the executor, further action of any nature is not permitted in the county court as long as the estate is represented by an independent executor unless the Probate Code specifically and explicitly provides for some action in the county court. TEX. PROB. CODE ANN. § 145(h);[7] *see also* § 145(e) (permitting all of an intestate decedent's distributees to agree to and apply for independent administration of the decedent's estate).[8] Regarding independent executors, the Code provides in part that if no will was probated, the independent executor may file his final account "in the county court in which the order appointing the independent executor was entered, and ask for either partition and distribution of the [Decedent's] estate or an order of sale of any portion of the [Decedent's] estate alleged by the independent executor and found by the court to be incapable of a fair and equal partition and distribution, or both; and the same either shall be partitioned and distributed or shall be sold, or both, in the manner provided for the partition and distribution of property and the sale of property incapable of division in estates administered under the direction of the county court."[9] TEX. PROB. CODE ANN. § 150.[10]

---

[7] Act of May 27, 1977, 65th Leg., R.S., ch. 390, § 3, sec. 145(h), 1977 Tex. Gen. Laws 1061, 1063, (S.B. 66), *repealed by* Act of May 29, 2011, 82nd Leg., R.S., ch. 1338, § 2.54(d)(1), 2011 Tex. Gen. Laws 3882, 3933-34, (S.B. 1198). Current version at TEX. ESTATES CODE ANN. § 402.001 (West 2014). All references to this statute are to this version unless noted otherwise.

[8] Act of May 27, 1977, 65th Leg., R.S., ch. 390, § 3, sec. 145(e), 1977 Tex. Gen. Laws 1061, 1062, (S.B. 66), *repealed by* Act of May 29, 2011, 82nd Leg., R.S., ch. 1338, § 2.54(d)(1), 2011 Tex. Gen. Laws 3882, 3933-34, (S.B. 1198). Current version at TEX. ESTATES CODE ANN. § 401.003(a) (West 2014). All references to this statute are to this version unless noted otherwise.

[9] The term "independent executor" is defined to include an independent administrator. TEX. PROB. CODE ANN. § 3(q). Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 3, sec. 3, 1955 Tex. Gen. Laws 88, 90, (S.B. 97), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502). Current version at TEX. ESTATES CODE ANN. § 22.017 (West 2014). All references to this statute are to this version unless noted otherwise.

Pursuant to Section 177, the duly-qualified personal representative is authorized to administer not only the separate property of the deceased spouse, but also the community property which was by law under the management of the deceased spouse during the marriage and all of the community property that was by law under the joint control of the spouses during the marriage. Section 177 also provides that "[t]he surviving spouse, as surviving partner of the marital partnership, is entitled to retain possession and control of all community property which was legally under the sole management of the surviving spouse during the continuance of the marriage and to exercise over that property all the powers elsewhere in this part of this code authorized to be exercised by the surviving spouse when there is no administration pending on the estate of the deceased spouse."[11]   TEX. PROB. CODE ANN. § 177.[12]

At any time after the original grant of letters testamentary or of administration, and the filing and approval of the inventory, the executor or administrator, or the heirs, devisees, or legatees of the estate, or any of them, may file a written application in the court and request a

[10]  Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 150, sec. 150, 1955 Tex. Gen. Laws 88, 137, (S.B. 97), *repealed by* Act of May 29, 2011, 82nd Leg., R.S., ch. 1338, § 2.54(d)(2), 2011 Tex. Gen. Laws 3882, 3933-34, (S.B. 1198). Current version at TEX. ESTATES CODE ANN. § 405.008 (West 2014).   All references to this statute are to this version unless noted otherwise.

[11]  The term "personal representative" is defined to include an independent administrator.   TEX. PROB. CODE ANN. § 3(aa).   Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 3, sec. 3, 1955 Tex. Gen. Laws 88, 91, (S.B. 97), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502).   Current version at TEX. ESTATES CODE ANN. § 22.031 (West 2014).   All references to this statute are to this version unless noted otherwise.

[12]  Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 177, sec. 177, 1955 Tex. Gen. Laws 88, 143, (S.B. 97), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502).   Current version at TEX. ESTATES CODE ANN. § 453.009(a)(b) (West 2014).   All references to this statute are to this version unless noted otherwise.

distribution of any portion of the decedent's estate. TEX. PROB. CODE ANN. § 373(a).[13] All

interested parties and known creditors are required to be personally cited, as in other distributions.

TEX. PROB. CODE ANN. § 373(c).[14] Upon proper citation and hearing, the court may then

distribute any portion of the decedent's estate it deems advisable. *Id*.[15] When a husband or wife

dies leaving any community property, the survivor may, at any time after letters testamentary or

letters of administration have been granted, and an inventory, appraisement, and list of the claims

of the estate have been returned or an affidavit in lieu of the inventory, appraisement, and list of

claims has been filed, make application in writing to the court which granted such letters for a

partition of such community property. TEX. PROB. CODE ANN. § 385(a).[16]

## ISSUES FOR REVIEW

---

[13] Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 373, sec. 373(a), 1955 Tex. Gen. Laws 88, 194, (S.B. 97), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502). Current version at TEX. ESTATES CODE ANN. § 360.001(a) (West 2014). All references to this statute are to this version unless noted otherwise.

[14] Act of May 12, 1973, 63rd Leg., R.S., ch. 182, § 2, sec. 373(c), 1973 Tex. Gen. Laws 407, 408, (S.B. 551), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502). Current version at TEX. ESTATES CODE ANN. § 360.002(b) (West 2014). All references to this statute are to this version unless noted otherwise.

[15] Act of May 12, 1973, 63rd Leg., R.S., ch. 182, § 2, sec. 373(c), 1973 Tex. Gen. Laws 407, 408, (S.B. 551), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502). Current version at TEX. ESTATES CODE ANN. § 360.002(c) (West 2014). All references to this statute are to this version unless noted otherwise.

[16] Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 385, sec. 385(a), 1955 Tex. Gen. Laws 88, 198, (S.B. 97), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502). Current version at TEX. ESTATES CODE ANN. § 360.253(a) (West 2014). All references to this statute are to this version unless noted otherwise.

In three issues, the heirs contend the court's rulings regarding the distribution of their father's estate and its grant of summary judgment declarations in favor of Jo are erroneous.[17] Jo brings six issues in which she challenges the heirs' standing, attacks the preservation of error, and complains that the trial court erred in its summary judgment order. Jo has also filed a motion to dismiss for want of jurisdiction.

## STANDARD OF REVIEW

"A declaratory judgment is a remedial action that determines the rights of the parties and affords relief from uncertainty with respect to rights, status, and legal relations." TEX. CIV. PRAC. & REM. CODE ANN. § 37.002 (West 2008); *Ysasaga v. Nationwide Mut. Ins. Co.*, 279 S.W.3d 858, 863 (Tex. App. – Dallas 2009, pet. denied). We review declaratory judgments decided by summary judgment under the same standards of review that govern summary judgments generally. TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2008).

We review a trial court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In conducting our review, we consider as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* When the parties file competing motions for partial summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, we render the judgment the trial court should have rendered.

---

[17]As this case was transferred from our sister court in Dallas, we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

10

*Id.*; *see also FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000); *Sanchez v. AmeriCredit Fin. Services, Inc.*, 308 S.W.3d 521, 523 (Tex. App. – Dallas 2010, no pet.).

## THE HEIRS' ISSUES

The heirs allege the trial court erred in: (1) holding that Chase could distribute undivided interests in Robledo rather than partitioning and distributing it as part of the estate under the Texas Probate Code; (2) declaring that Chase's "prior distributions of most of the estate" were "not unlawful;" and (3) granting summary judgment because there exists a genuine issue of material fact regarding the existence of an "agreement to the previous distributions" and because there is no evidence that the heirs agreed to the independent administrator's distribution of "undivided interests" or to the plan of partition and distribution.

### *Standing Regarding Robledo*

We begin by addressing Jo's first issue that the heirs lack standing after conveying the entirety of their interests in Robledo to a third-party entity. Contending that each of the heirs' appellate issues "centers upon Robledo," Jo argues that their entire appeal should be dismissed for want of jurisdiction.

Standing is a component of subject matter jurisdiction, cannot be waived, and can be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445-46 (Tex. 1993); *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 248 (Tex. App. – Dallas 2005, no pet.). When considering jurisdictional issues, we construe the petition in favor of the party, and if necessary, we determine whether any evidence supports standing by reviewing the entire record. *Willis v. Marshall*, 401 S.W.3d 689, 695 (Tex. App. – El Paso 2013, no pet.), *citing Tex. Ass'n of Bus.,* 852 S.W.2d at 446.

11

A plaintiff must have standing to bring a lawsuit. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it. *See Heckman v. Williamson County*, 369 S.W.3d 137, 150-51 (Tex. 2012); *see also Thomas v. Long,* 207 S.W.3d 334, 338 (Tex. 2006)(a trial court properly dismisses claims over which it has no subject matter jurisdiction); *Lovato*, 171 S.W.3d at 849; *Tex. Ass'n of Bus.*, 852 S.W.2d at 443. Therefore, if a plaintiff is without standing to assert one of his claims, the court lacks jurisdiction over that claim and is required to dismiss it. *See Heckman*, 369 S.W.3d at 150-51 (also noting that plaintiff's whole action must be dismissed for want of jurisdiction if plaintiff lacks standing to bring *any* of his claims); *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008); *Noell v. Air Park Homeowners Ass'n, Inc.,* 246 S.W.3d 827, 832 (Tex. App. – Dallas 2008, pet. denied).

Standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *Lovato*, 171 S.W.3d at 848. The general test requires that there be a real controversy between the parties that will actually be determined by the judicial declaration sought. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Lovato*, 171 S.W.3d at 849. This means that litigants must be "properly situated to be entitled to [a] judicial determination." *Lovato*, 171 S.W.3d at 849.

A person who is personally aggrieved by the alleged wrong has standing to sue. *Nootsie Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex. 1996). A person has standing if he (1) has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) has a personal stake in the controversy; (4) has

suffered some injury in fact, either economic, recreational, environmental, or otherwise; or (5) is an appropriate party to assert the public's interest in the matter, as well as his own. *Nauslar*, 170 S.W.3d at 249.

To maintain its claims, a party must maintain standing throughout the proceedings, even during the pendency of the appeal. *See, e.g., Williams v. Lara,* 52 S.W.3d 171, 184 (Tex. 2000); *Trulock v. City of Duncanville,* 277 S.W.3d 920, 924 (Tex. App. – Dallas 2009, no pet.). A plaintiff has no standing to litigate without a breach of a legal right owed to him. *Nobles v. Marcus,* 533 S.W.2d 923, 927 (Tex. 1976)("Without breach of a legal right belonging to the plaintiff no cause of action can accrue to his benefit."); *Nauslar*, 170 S.W.3d at 249; *Cadle Co. v. Lobingier,* 50 S.W.3d 662, 669–70 (Tex. App. – Fort Worth 2001, pet. denied); *Brunson v. Woolsey,* 63 S.W.3d 583, 587 (Tex. App. – Fort Worth 2001, no pet.). Only the person whose primary legal right has been breached may seek redress for an injury. *Nobles,* 533 S.W.2d at 927; *compare Singh v. Duane Morris, L.L.P.*, 338 S.W.3d 176, 181-82 (Tex. App. – Houston [14th Dist.] 2011, pet. denied)(sole shareholder of corporation was without standing to recover personally for damages incurred by corporation, which is a separate legal entity from shareholders, officers, and directors); *Rakowski v. Comm. to Protect Clear Creek Vill. Homeowners' Rights*, 252 S.W.3d 673, 679 n.9 (Tex. App. – Houston [14th Dist.] 2008, pet. denied)(committee for homeowner's association that did not own park was without standing to contest issues concerning ownership of park).

### *Analysis*

In support of her argument, Jo presented two special warranty deeds by which the heirs conveyed their respective interests in Robledo to Quagmire, L.L.C. The heirs concede this issue

13

and admit they each possess a 50% ownership interest in Quagmire. Stephen explained that an attorney in Oklahoma advised that he and Laura could best protect their interests in Robledo by temporarily conveying title to a limited liability company and subsequently re-conveying those interests after appeal. The heirs express a present ability and willingness to re-convey to Chase their interests in Robledo and contend that Jo has failed to present evidence that they are unwilling or unable to do so. The heirs acknowledge that their appellate counsel was unaware of the conveyance until counsel reviewed Jo's motion to dismiss.

It is undisputed that the heirs' undivided interests in Robledo are now owned by Quagmire, L.L.C., a non-interested party. As such, there is no real controversy between the heirs and their stepmother that will actually be determined by judicial declarations. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Lovato*, 171 S.W.3d at 849*; City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 244 (Tex. App. – Fort Worth 2007, pet. denied). Because the heirs lack standing regarding all matters involving Robledo, we sustain Jo's first issue, grant her motion to dismiss in part, and dismiss the heirs' first issue.

We consider the heirs' second and third issues together. In Issue Two, they complain of the court's declaration that prior distributions of the estate did not require the statutory partition and distribution process pursuant to Texas Probate Code § 150 and §§ 373 *et seq.* and thus were "not unlawful." They further allege that Chase was incorrect in claiming that its prior distribution of assets was not a partition, and that the court's declaration that all previous distributions were "not unlawful" effectively constituted a finding that "prior partitioning and distributing 'independent of §150' was proper and the [administrator] need not comply with code §150 to make such partition." In the argument portion of their brief, the heirs have failed to direct us to the

14

portion of the record wherein these prior distributions are enumerated. *See* TEX. R. APP. P. 38.1(i)("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Davis v. Kaufman County*, 195 S.W.3d 847, 851 (Tex. App. – Dallas 2006, no pet.). As such, the issue is improperly briefed. *See* TEX. R. APP. P. 38.1(i); *Davis v. Kaufman County¸* 195 S.W.3d 847, 851 (Tex. App. — Dallas 2006, no pet.).

In Issue Three, the heirs contend the trial court erred in granting summary judgment because there is a genuine issue of material fact as to the existence of an agreement about the prior distributions. We disagree. After the filing and approval of the independent administrator's inventory, the heirs of an estate may file a written application in the court and request a distribution of any portion thereof. TEX. PROB. CODE ANN. § 373(a). The court may then distribute any portion of the estate it deems advisable. TEX. PROB. CODE ANN. § 373(c). We note that Sections 150 and 373 of the Probate Code apply to Max's estate alone, and do not permit Chase to partition or distribute property not included in the estate. TEX. PROB. CODE ANN. §§ 150, 373(a). Under Sections 150 and 373 of the Probate Code, Chase had the option of partitioning but was not required to do so, and was permitted to make distributions without partition. *See* TEX. PROB. CODE ANN. §§ 150, 373(a), (c). Sections 150 and 373 of the Probate Code do not require Chase to secure an heir's consent prior to distribution of an estate under an independent administration. *Id.* Finally, having determined that the heirs are without standing to urge any matters regarding Robledo, we do not address them in relation to these issues. We overrule Issues Two and Three.

**JO'S ISSUES**

15

We now consider the widow's remaining issues. Because we have determined the heirs lack standing on issues involving Robledo, we need not address her second issue that the heirs' appeal was not properly perfected.

In Issue Three, Jo complains of the trial court's denial of requested declarations two, three, four, five, and eight, and the implied granting of the heirs' second and third declarations. We address each separately.

Jo sought a declaration that, immediately upon Max's death, she retained and was fully vested in the fee simple title to her undivided one-half community interest in Robledo and that Max's undivided one-half thereof passed to his children. Article 16, Section 52 of the Texas Constitution and Texas Probate Code Section 37 provides for the immediate vesting of an intestate decedent's estate in his heirs at law. Section 45 provides that one-half of the community property is retained by an intestate decedent's surviving spouse and the other one-half passes to the heirs of the deceased spouse when those heirs are not also the heirs of the decedent's surviving spouse. TEX. CONST. art. XVI, § 52; TEX. PROB. CODE ANN. §§ 37, 45(b).[18] Pursuant to these provisions, the trial court clearly erred in denying her second summary judgment issue.

In her third summary judgment issue, Jo sought a declaration that because the residence was community property and because she as the surviving spouse has elected to maintain the residence as her constitutional homestead, she has the exclusive right of use and possession thereof while the heirs' interest is subject thereto. Article 16, Section 52 of the Texas Constitution and

---

[18] Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 37, sec. 37, 1955 Tex. Gen. Laws 88, 100, (S.B. 97), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502). Current version at TEX. ESTATES CODE ANN. § 101.001(b) (West 2014). All references to this statute are to this version unless noted otherwise.

16

Section 283 of the Texas Probate Code provide that upon the death of the husband or wife, leaving a spouse surviving, the homestead shall descend and vest in like manner as other real property of the deceased and shall be governed by the same laws of descent and distribution, and Section 284 prohibits the partitioning of the homestead among the heirs of the deceased during the lifetime of the surviving spouse, or so long as the survivor elects to use or occupy the same as a homestead. TEX. CONST. art. XVI, § 52; TEX. PROB. CODE ANN. §§ 283, 284. Under these provisions, the trial court clearly erred in denying Jo's third summary judgment issue.

In her fourth summary judgment issue, Jo sought a declaration that the constitutional homestead is not subject to administration, and no party may be granted a partition thereof as long as she maintains it as her homestead. Pursuant to the provisions of article 16, Section 52 of the Texas Constitution and Section 284 of the Texas Probate Code discussed above, the trial court clearly erred in denying her fourth summary judgment issue. TEX. CONST. art. XVI, § 52; TEX. PROB. CODE ANN. § 284.

The fifth summary judgment issue sought the trial court's declaration that Chase shall not offset her share of the assets with any value attributable to her right of sole use and possession of the home. The eighth issue asked the court to declare that neither Chase nor the court could partition the homestead, whether under Section 380 of the Texas Probate Code or otherwise, without her consent, as long as it is her homestead, until she either dies or voluntarily abandons the property.

17

Section 380 of the Probate Code sets forth the provisions for partition and distribution if property is capable of division. TEX. PROB. CODE ANN. § 380.[19] The Texas Constitution and Probate Code 284 prohibit the partitioning of the constitutional homestead among the heirs during Jo's lifetime, for so long as she elects to occupy it as a constitutional homestead. TEX. CONST. art. XVI, § 52; TEX. PROB. CODE ANN. § 284. The one-half community property interest that Jo retained upon her husband's death is not part of his estate but is subject to administration. TEX. CONST. art. XVI, § 52; *see* TEX. PROB. CODE ANN. §§ 3(l), 37, 45(b), 177 (Distribution of Powers Among Personal Representatives and Surviving Spouse). Section 373(a) does not accord her a right to request partition or distribution of the estate. *See* TEX. PROB. CODE ANN. §§ 3(l), 373(a). But she alone may apply for a partition of community property. *See* TEX. PROB. CODE ANN. § 385(a). Only then will the partition provisions of the Probate Code apply to a partition of the community property owned by Max and Jo. *See* TEX. PROB . CODE ANN. § 385(b).[20] Jo did not file an application for partition of the community estate. We have not been directed to any constitutional, statutory, or case authority which suggests that a value may be attributed to her right of sole use and possession of Robledo and charged against her share of assets. Because Jo's fifth and eighth requested declarations are supported by law, the trial court erred in denying them.

---

[19] Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 380, sec. 380, 1955 Tex. Gen. Laws 88, 195, (S.B. 97), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502). Current version at TEX. ESTATES CODE ANN. § 360.151-156 (West 2014). All references to this statute are to this version unless noted otherwise.

[20] Act of March 16, 1955, 54th Leg., R.S., ch. 55, § 385, sec. 385(b), 1955 Tex. Gen. Laws 88, 198, (S.B. 97), *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10, 2009 Tex. Gen. Laws 1512, 1731, (H.B. 2502). Current version at TEX. ESTATES CODE ANN. § 360.253(c) (West 2014). All references to this statute are to this version unless noted otherwise.

The trial court also erred in impliedly granting the heirs' second and third summary judgment declarations in which they sought and obtained declarations that a partition of the estate under Section 150 of the Probate Code includes the entire community property estate subject to administration by the independent administrator, that such partition is not limited to a partition of Max's separate property and one-half interest in community property, that the partition of community property subject to estate administration must include Robledo, and that the party that does not receive Robledo should receive assets equal in value to the full fair market value of Robledo. As we have previously noted, Section 150 addresses administration of "the estate," which is restricted to Max's estate as defined in Section 3(l), and Section 45(b) directs that Jo retains one-half of the community property. *See* TEX. PROB. CODE ANN. §§ 3(l), 45(b), 150.

While administration by the independent administrator of the community property which was under the management of the deceased spouse during the marriage and of all of the community property under the joint control of the spouses during the marriage is permitted, the surviving spouse is entitled to retain possession and control of all community property which was legally under the sole management of the surviving spouse during the marriage. *See* TEX. PROB. CODE ANN. § 177. No partition of the community property owned by Max and Jo may occur unless Jo applies for partition thereof. TEX. PROB. CODE ANN. § 380. Therefore, the court's implied granting of the heirs' second requested declaration was erroneous.

Under the Texas Constitution and the Probate Code, Jo retained and was fully vested in the fee simple title to her undivided one-half community interest in Robledo upon Max's death. TEX. CONST. art. XVI, § 52; TEX. PROB. CODE ANN. §§ 37, 45(b). Because the court's grant of the heirs' third requested declaration was erroneous. We sustain Jo's third issue.

19

The order issued August 15, 2012, provides that Chase "may distribute the Robledo property in undivided interests subject to the Homestead Right and the existing mortgage indebtedness, to-wit: 50% to [Mrs. Hopper], and 25% each to [the heirs] at any time, including the present time[.]" In Issue Four, Jo contends the court lacked subject matter jurisdiction to make this declaration because there was no justiciable controversy. She alleges, in part, that the issue was moot and constitutes an impermissible advisory opinion.

Whether a court has subject matter jurisdiction is a legal question that we review *de novo*. *See Trulock v. City of Duncanville*, 277 S.W.3d 920, 923 (Tex. App. – Dallas 2009, no pet.), *citing City of Shoreacres v. Tex. Comm'n of Envtl. Quality,* 166 S.W.3d 825, 830 (Tex. App. – Austin 2005, no pet.). The mootness doctrine implicates subject matter jurisdiction. *Trulock*, 277 S.W.3d at 923 (citation omitted). A case is moot if there are no live controversies between the parties and any decision rendered by the court would be an advisory opinion. *Seals v. City of Dallas*, 249 S.W.3d 750, 754 (Tex. App. – Dallas 2008, no pet.), *citing Camarena v. Tex. Employment Comm'n,* 754 S.W.2d 149, 151 (Tex. 1988). An issue is moot if either a party seeks a judgment on a controversy that does not really exist or a party seeks a judgment which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy. *Seals v. City of Dallas*, 249 S.W.3d 750, 754 (Tex. App. – Dallas 2008, no pet.); *Young v. Young,* 168 S.W.3d 276, 287 (Tex. App. – Dallas 2005, no pet.).

The Texas Supreme Court has held the Declaratory Judgments Act to be "merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power, permitting the rendition of advisory opinions." *Tex. Ass'n of*

*Bus.,* 852 S.W.2d at 444. An advisory opinion is one which decides an abstract question of law without binding the parties. *Id.*

A court's declaratory judgment is proper only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *See Bonham State Bank v. Beadle,* 907 S.W.2d 465, 467 (Tex. 1995); *Noell,* 246 S.W.3d at 832. "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bonham State Bank,* 907 S.W.2d at 467; *Noell,* 246 S.W.3d at 832.

Because Chase had issued the Robledo deed to the heirs and Jo on June 25, 2012, thereby removing Robledo from administration, the court erred in its declaration regarding its distribution. As no justiciable controversy existed and the declaration could have no legal effect on a then-existing controversy, the issue was moot and the court was without jurisdiction to make the declaration. *See Seals*, 249 S.W.3d at 754. Jo contends the court should have declared, and asks that we so declare, that Chase failed to timely act "as originally required." Having already addressed the merits of Issue Four, we decline to do so. We sustain Issue Four.

In her fifth and sixth issues, Jo challenges the court's second and third declarations in its order which state:

> 2. [T]he independent administrator . . . may require return of [some] distributions previously distributed to any party ("clawback"), if necessary for the proper administration of this estate ["Declaration 2"]; and

> 3. [A]ll such returns of distributions of property, cash, stocks, and other property, shall be effected by the Independent Administrator exercising its sole authority and discretion, but which shall not be exercised unreasonably ["Declaration 3"].

21

She argues that the declarations regarding Chase's authority to "clawback" prior distributions were erroneous because it had not sought the declarations in a motion for summary judgment. TEX. R. CIV. P. 166a(c). We agree.

Jo named Chase as a defendant in her suit. "A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." TEX. R. CIV. P. 166a(b).

In response to Jo's first amended original petition, Chase filed a first amended answer, special exception, counterclaim, and cross-claim in which it sought the following declaratory relief:

> Third, in the event the Administrator elects to pursue a partition action that awards all of the Robledo Property to Mrs. Hopper, and if there is insufficient property of Mrs. Hopper that remains subject to the administration of the Administrator to equalize the value of the Decedent's interest in the Robledo Property partitioned to Mrs. Hopper, the Administrator seeks a declaration of its right to require return of community property previously distributed to Mrs. Hopper in order to offset the value of the Robledo Property being partitioned to her.

Jo's summary judgment motion asserted, "Plaintiff refutes this position and requests it be Denied and summary judgment be granted her thereon." She argued that no provision of the Probate Code permitted Chase to retake property that it had already released from administration.

In response, Chase re-urged the declaration but did not move for summary judgment. On appeal, it counters that the declarations were the court's necessary resolution of legal issues raised by Jo and the heirs. Chase also contends that Rule 166a(c) permitted the court to enter judgment

22

as a matter of law on the issues set out in the motion or in an answer or any other response. TEX. R. CIV. P. 166a(c).

The court's summary judgment disposed of the widow's and the heirs' summary judgment declarations by specifically granting or denying their requested relief. There was no motion for summary judgment seeking relief for Chase. The challenged declarations are not set out in the summary judgment order. Rather, they are set out in the companion order presumably entered in response to the motions filed by the heirs and the widow in connection with the summary judgment order seeking new trial, reconsideration, clarification, and modification. *See Teer v. Duddlesten*, 664 S.W.2d 702, 703 (Tex. 1984)(trial court may not grant summary judgment in favor of party that does not move for summary judgment); *Mitchell v. Baylor Univ. Med. Ctr.*, 109 S.W.3d 838, 844 (Tex. App. – Dallas 2003, no pet.)(order granting summary judgment to party who did not move for summary judgment is erroneous and must be reversed); *see also Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 688 (Tex. App. – Dallas 2000, no pet.)(summary judgment purporting to dispose of causes of action not addressed in summary judgment motion is erroneous); *Gen. Mills Restaurants, Inc. v. Texas Wings, Inc.*, 12 S.W.3d 827, 836 (Tex. App. – Dallas 2000, no pet.)(court improperly granted more relief than requested when it disposed of issues not presented in motion for summary judgment); *Mary Kay Cosmetics, Inc. v. N. River Ins. Co.*, 739 S.W.2d 608, 611 (Tex. App. – Dallas 1987, no writ), *citing Young v. Hodde*, 682 S.W.2d 236, 237 (Tex. 1984)(agreeing with the court of appeals' conclusion that the trial court erred in rendering take-nothing judgment against respondent's counterclaim in the absence of a motion for summary judgment by petitioner seeking that relief). The only pleadings before the court were

23

Jo's and the heirs' competing summary judgment motions. Chase did not move for judgment on its pleadings.

Contrary to Chase's assertions, we disagree that the declarations were authorized by the court's ruling on the summary judgments properly before it in the absence of a motion requesting such relief. Moreover, it is evident to us that the court amended its summary judgment order and omitted from its second revised summary judgment the complained-of declarations and then issued the challenged declarations in a separate "order" after it was clear that the motions for summary judgment before the court would not support the entry of such declarations. Because the court erred in entering the second and third declarations, we sustain Issue Five.

In her sixth issue, Jo presents well-reasoned complaints and again correctly challenges as erroneous the trial court's second and third declarations regarding Chase's ability to "clawback" prior distributions as necessary for the proper administration of the estate. Because we have determined that the court did not have a motion before it that would authorize the entry of the second and third declarations in its order, we sustain Issue Six. *See Teer*, 664 S.W.2d at 703.

**CONCLUSION**

Having sustained Jo's first issue, we grant the motion to dismiss in part and dismiss the heirs' first issue. Having sustained Jo's third issue, we reverse the trial court's Second Revised Order on Motions for Summary Judgment which (1) impliedly declares (a) that a partition of Max's estate under Section 150 of the Probate Code includes the entire community property estate subject to administration by Chase and that such partition is not limited to a partition of Max's separate property and his one-half interest in community property and (b) that the partition of the entire community property subject to estate administration must include Robledo, and that the

24

party that does not receive Robledo should receive assets equal in value to the full fair market value of Robledo; and (2) which denies Jo's second, third, fourth, fifth, and eighth requested declarations sought in her Motion for Partial Summary Judgment. We render judgment granting Jo's second, third, fourth, fifth, and eighth requested summary judgment declarations and declare:[21]

> (1) That immediately upon Max's death, Jo retained and was fully vested in the fee simple title to her undivided one-half community interest in Robledo, and Max's undivided one-half interest passed to his heirs.

> (2) That since Robledo was the community homestead, and since Jo has elected to maintain it as her homestead, she has the exclusive right of use and possession thereof. The heirs' interest is subject to her exclusive right of use and possession.

> (3) That the homestead is not subject to administration, and no party may be granted a partition of the homestead as long as Jo maintains it as her homestead.

> (4) That Chase shall not charge Jo's share of the assets being administered any value attributable to her right of sole use and possession of the heirs' one-half interest in Robledo and any tangible personal property in connection therewith.

> (5) That neither Chase nor any court may partition the homestead between (i) Jo and (ii) Max's estate or the heirs whether under Section 380 of the Texas Probate Code or otherwise, without Jo's consent, as long as it is her homestead.

Having sustained Jo's fourth issue, we reverse the trial court's first declaration "that the Independent Administrator JPMorgan Chase Bank, N.A., may distribute the Robledo property in undivided interests, subject to the Homestead Right and the existing mortgage indebtedness, to-wit: 50% to Jo N. Hopper, and 25% each to Decedent's two children, at any time, including the present time[.]"

---

[21] These declarations differ from those sought by Jo by the addition of clarifying language to accurately describe the parties in accordance with this opinion. No substantive change to the requested declarations is made or intended.

Having sustained Jo's fifth and sixth issues, we reverse the trial court's second and third declarations "that the Independent Administrator JPMorgan Chase Bank, N.A., may require return of [some] distributions previously distributed to any party ('clawback'), if necessary for the proper administration of this estate," and "that all such returns of distributions of property, cash, stocks, and other property shall be effected by the Independent Administrator exercising its sole authority and discretion, but which shall not be exercised unreasonably[.]" Having overruled the heirs' second and third issues, we affirm the remainder of the judgment.

                                                    ANN CRAWFORD McCLURE, Chief Justice

December 3, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating

26