

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE | § | No. 08-23-00167-CV |
| OF EDWARD R. PORTILLO | § | Appeal from the |
| DECEASED. | § | Statutory Probate Court No. 2 |
| | § | of El Paso County, Texas |
| | § | (TC# 2018CPR00773) |
| | § | |

**MEMORANDUM OPINION**

This appeal arises from the dispute between the heirs of Edward R. Portillo over how his estate should be divided. Edward was survived by his wife, Appellee Leandra Portillo, their daughter, Rebecca Portillo, and his daughter from a previous marriage, Appellant Amanda Portillo. Following years of litigation, Amanda and Leandra reached a mediated settlement agreement. But before the final distribution of the estate, the parties disputed the meaning of a key term in the settlement agreement.

While this case involves protracted litigation and numerous hearings, the appeal before us boils down to one question: did the probate court change the agreement of the parties when it interpreted the term "estate property" to exclude Leandra's half of the community property. We hold that it did not, and we affirm the judgment below.

## FACTUAL AND PROCEDURAL BACKGROUND

This case began as a suit by Leandra to probate Edward's will. Because Leandra and Amanda were both subscribing witnesses and devisees under the will, Leandra sought to probate the will using the notary as the subscribing witness. *See* Tex. Estates Code Ann. § 254.002(c) (setting out how a disinterested and credible person can corroborate a subscribing witness and devisee). Leandra later filed an affidavit by the notary in which the notary attested that she witnessed Edward, Amanda, and Leandra all sign the will.

But Amanda denied signing the will in the presence of the notary and contested the will, asking the court to instead determine heirship and appoint an administrator. In a deposition, the notary admitted that her affidavit was untrue and that the will had already been signed by Amanda and Leandra when Edward brought it to her; the notary did not observe the subscribing witnesses sign the will and the subscribing witnesses did not actually observe Edward sign the will. Amanda moved to strike the notary's affidavit and the probate court granted her request.

The probate court appointed Karen Colon as a third-party dependent administrator. Colon filed an inventory of the property, approved and disapproved creditor's claims, and filed accountings. The administrator valued Edward's estate at $463,953.10, which included half the value of Edward and Leandra's community property in the amount of $17,917.50.[1]

After almost three years of litigation, the parties settled their dispute in mediation. They first agreed who should receive certain property: Leandra was to receive Amanda's interest in the marital home, and five weapons of her choosing; Amanda was to receive a Trans Am, five specific firearms, personal documents, and family heirlooms; Rebecca was to receive a Rolex, five

---

[1] Community property is property "acquired by either spouse during marriage" except for property "acquired . . . by gift, devise, or descent" and "recovery for personal injuries . . . except any recovery for loss of earning capacity during marriage." Tex. Fam. Code Ann. §§ 3.001, .002.

weapons of her choosing and her grandfather's service uniform. The remainder of the estate property was to be divided 35% to Amanda and 32.5% each to Leandra and Rebecca. As the administration of the estate continued, the probate court approved three partial distributions to the parties in accordance with the percentages in the settlement agreement.

After the mediation, but while the case was still pending, Amanda filed a suit against the notary and her surety for fraud and breach of notary duties based on the notary's untrue statements in her affidavit. The surety filed third-party claims against Leandra and her attorneys. The notary fraud case eventually settled, but before it did, Amanda filed a motion to disqualify Leandra's attorneys based on their alleged conflict of interest with their own client (Leandra) and their role as fact witnesses to the fraud. The court denied the motion.

When approximately $65,000 was left to be distributed, the parties disagreed over whether the entire amount was estate property that must be divided as specified by the settlement agreement or whether half of the value of the community property in the estate must be given to Leandra before the remainder was divided. The court entered orders finding that the "estate property" did not include Leandra's half of the community property.

Amanda filed a motion for new trial. She later supplemented it, attaching as an exhibit, an email between her attorney and Leandra's attorney discussing possible settlement options. The probate court struck the supplemental motion because it attached inadmissible settlement discussions between the attorneys. The court then denied Amanda's motion for new trial.

This appeal followed in which Amanda raises five issues. Issues one, two, and three argue that the trial court modified or re-wrote the terms of the settlement agreement. In issue four, Amanda argues that the probate court erred striking her supplemental motion for new trial. In issue five, Amanda challenges the probate court's denial of the motion to disqualify Leandra's attorneys.

## INTERPRETATION OF THE SETTLEMENT AGREEMENT

Because Amanda's first three issues all contest the interpretation of the settlement agreement, we address them as one. The settlement agreement provided that, aside from awards of specific property, Amanda would receive "35% of the estate property" and Leandra and Rebecca would each receive 32.5% of "the estate property." The meaning of term "estate property" is the crux of this dispute. Amanda argues that it includes all community property and Leandra argues that it does not include her one-half undivided interest in the community property. In other words, under Leandra's interpretation, half of the amount attributed to community property should be removed before the remainder is divided. Under Amanda's interpretation, it is not.[2]

The trial court agreed with Leandra. Its order enforces the mediated settlement agreement as follows:

1. In probate cases, the estate of the decedent only includes his or her property. The portion of the community estate that belongs to the surviving spouse is not part of the decedent's estate.

2. Decedent's surviving spouse will receive her one half (1/2) community property share of all community property assets and a thirty-two-and one-half percent (32.5%) share of Decedent's estate assets.

3. The remaining assets of the Decedent's estate shall be distributed thirty-five percent (35%) to AMANDA PORTILLO and a thirty-two and one-half percent (32.5%) to REBECCA PORTILLO, in accordance with the parties [sic] Mediated Settlement Agreement.

---

[2] According to our record, the only community property was household furniture, a 2014 Harley Davidson, a 2008 Chevy Impala, and two 2012 Buick Lacrosses. The administrator's inventory does not contain a value for the household furniture. The motorcycle and vehicles were all sold for a total of $18,700. Under Amanda's interpretation, she is entitled to 35% of that amount, or $6,545. Under Leandra's interpretation, half of that amount is her part of the community and only the remaining half would be divided among the heirs. Using that interpretation, Amanda would receive $3,272.50.

4

A settlement agreement is construed according to contract principles. Tex. Civ. Prac. & Rem. Code Ann. § 154.071(a); *Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017); *Bergenholtz v. Eskenazi*, 521 S.W.3d 397, 401 (Tex. App.—El Paso 2017, pet. denied). A court must give effect to the parties' intent, but that intent is determined by the words used. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018). If the words of the agreement have a "certain and definite" meaning, they are not ambiguous, and the court cannot consider parole evidence to interpret the agreement. *Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012); *Alicea v. Curie Bldg., L.L.C.*, 632 S.W.3d 142, 153 (Tex. App.—El Paso 2021, no pet.). We review decisions about whether a contract is ambiguous and how to interpret an unambiguous contract de novo. *URI, Inc.*, 543 S.W.3d at 763.

### A. The meaning of "estate property" is unambiguous.

Interpretation of the settlement agreement in this case turns on the term "estate property" and whether it has a definite and certain meaning. Although not defined in the settlement agreement, the Texas Estates Code defines "estate" as "a decedent's property." Tex. Estates Code Ann. § 22.012. Over a century of caselaw establishes that the decedent's property does not include the surviving spouse's one-half interest in community property. See *Carnes v. Meador*, 533 S.W.2d 365, 368 (Tex. App.—Dallas 1975, writ ref'd n.r.e.) (surviving spouse "owned one-half of the community property in her own right and not as heir."); *Aguirre v. Bosquez*, No. 04-06-00068-CV, 2006 WL 2871339, at *3 (Tex. App.—San Antonio Oct. 11, 2006, no pet.) (mem. op.) ("Upon a spouse's death, the surviving spouse does not take their own one-half interest in the community estate as an heir; rather, the surviving spouse is the owner of the one-half interest of the property due to the dissolution of the marriage."); *Kreis v. Kreis*, 36 S.W.2d 821, 827 (Tex. App.—Amarillo 1931, writ dism'd w.o.j.) (same); *Jones v. State*, 5 S.W.2d 973, 975

(Tex. Comm'n App. 1928) (same); *Slavin v. Greever*, 209 S.W. 479, 485 (Tex. App.—Amarillo 1919, no writ) (same). This Court too has noted that only half the amount of community property makes up a decedent's estate. *Wassmer v. Hopper*, 463 S.W.3d 513, 517 (Tex. App.—El Paso 2014, no pet.). Any other rule would mean that a surviving spouse could be divested of community property.

We hold that the term "estate property" in the settlement agreement is unambiguous and means only Edward's property, which is comprised of his separate property and his one-half interest in the community property. Leandra remained the owner of an undivided one-half interest in the community property.

### B. Amanda's arguments to the contrary are unavailing.

Amanda puts forward several arguments for interpreting the settlement agreement as dividing all property, including the share of community property that Leandra owns. None, however, address the heart of the issue: the interpretation of "estate property." And all require us to look past the unambiguous language of the agreement.

First, Amanda argues that the parties expressly "agree[d] to compromise and settle all claims and controversies between them." She says that Leandra knew that the "claims" that were being settled included her claims for community property because Leandra had filed an authenticated claim with the administrator. Leandra's authenticated claim, however, was not for a share of community property, as Amanda says; instead, it was a claim for reimbursement. Leandra and Edward each owned a one-half *separate* property interest in the home. Leandra's authenticated claim alleged that community property funds were used to reduce the debt on separate property, and that the community estate was therefore entitled to reimbursement. Tex. Fam. Code Ann. § 3.402. Leandra's claim was that of a creditor, not as one seeking her community property share.

6

Leandra's pre-mediation dispute about whether she was entitled to *reimbursement* for mortgage payments was not a claim for property and is irrelevant to the interpretation of the unambiguous term "estate property." Consequently, the settlement agreement may have resolved the reimbursement claim but did not affect Leandra's continued ownership interest in the community property.

Amanda also contends that the probate court erred in interpreting the settlement agreement based on attorney argument alone, without any evidence. But, it would have been error to consider evidence outside of the four corners of an unambiguous agreement. When the terms of an agreement are unambiguous, as "estate property" is here, courts must construe settlement agreements as a matter of law without extraneous evidence. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

Next, Amanda claims that the settlement agreement addresses community property because Amanda agreed that Leandra could have her interest in the home. Yet the home was not community property.[3] The fact that Amanda bargained away her one-quarter interest does not change the unambiguous meaning of "estate property," nor are we permitted to speculate about why she did so. "The parties' intent is governed by what they said in the [] contract, not by what one side or the other alleges they intended to say but did not." *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010).

Amanda argues that the inventory that she relied on in mediation showed that only two vehicles were community property. But an annual accounting filed on February 2, 2021, more than

---

[3] If passed by intestacy, Amanda would have received half of Edward's one-half separate property interest (a 25% interest in the home), with Leandra retaining her one-half separate property interest and a one-third life estate. Tex. Estates Code Ann. § 201.002(b)(3).

a month before mediation, reflected changes to the inventory, specifically adding a motorcycle and 2008 Chevrolet Impala to the community property portion of the estate. The inventory and accounting also show that the estate value of this property is half the total of the community property value. So it could be equally said that at mediation, the inventory listed not only what property was community property, but also that only one-half the amount was estate property.

Finally, Amanda argues that Leandra is estopped from claiming that a portion of the remaining funds are not estate property because she already accepted three partial distributions. "The [quasi-estoppel] doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). But receiving partial distributions is not inconsistent with the position that a portion of the *remaining* funds are not subject to distribution as estate property. Nor has Amanda shown a benefit to Leandra from the partial distribution that she would not have otherwise received. Had Leandra requested her community property share earlier, her previous partial distributions would have been *more* not *less*.

We overrule issues one, two, and three.

### ATTORNEY EMAIL EXCHANGE STRUCK UNDER RULE OF EVIDENCE 408.

In her fourth issue, Amanda argues that the trial court erred in striking her supplemental motion for new trial. The supplemental motion attached as an exhibit an email exchange between the attorneys but otherwise makes the same arguments as the initial motion for new trial. In the email, Leandra's attorney suggests dividing the remaining funds pursuant to the intestacy rules since the parties could not agree on the interpretation of the settlement agreement. Leandra moved

to strike the motion on the grounds that settlement discussions are inadmissible. The probate court granted her motion.

Texas Rule of Evidence 408 prohibits the use of not just settlement offers, but also "conduct or statements made during compromise negotiation" to "prove or disprove the validity or amount of a disputed claim." Tex. R. Evid. 408(a)(2). Amanda contends that the email was admissible because it is used for a permissible purpose, namely, to show Leandra's attorney's bias. *Id.* Rule 408 provides that settlement discussions are permissible for other purposes, "such as proving a *party*' or *witness's* bias, prejudice, or interest. . . ." Tex. R. Evid. 408 (emphasis added). But Amanda does not explain how an *attorney's* bias has any relevance whatsoever.

The material issue in this case is the meaning of the term "estate property" in the settlement agreement. And, as we have held, that term is unambiguous. Because neither the probate court nor this Court can consider extraneous evidence to construe an unambiguous agreement, the attorney's proposal to resolve the dispute is not controlling on this issue and would not have affected the outcome of this case. We overrule Appellant's issue 4.

### DENIAL OF MOTION TO DISQUALIFY

Finally, Amanda argues that the probate court erred in denying her motion to disqualify Leandra's attorneys. Leandra and her attorneys were named as third-party defendants in the notary fraud lawsuit. Amanda claims Leandra's attorneys should have been disqualified for having a conflict of interest with their own client—Leandra—and because they were fact witnesses to the fraud.

One party can raise the issue of an opposing counsel's conflict of interest with the opposing party's client "[w]here the conflict is such as clearly to call in question the fair or efficient administration of justice. . . ." Tex. Disciplinary R. Prof'l Conduct 1.06, cmt. 17. "Such an

objection should be viewed with great caution, however, for it can be misused as a technique of harassment." *Id.; In re Robinson*, 90 S.W.3d 921, 925 (Tex. App.—San Antonio 2002, no pet.). In addition to showing a violation of the rules, the movant must also show that it will suffer prejudice if the attorney is not disqualified. *In re Murrin Bros. 1885, Ltd*., 603 S.W.3d 53, 57 (Tex. 2019).

Even if we assume that Leandra' attorneys had a conflict of interest with Leandra or that they may have been fact witnesses in the fraud suit against the notary, Amanda fails to demonstrate reversible error. The suit against the notary was filed on October 4, 2022, more than a year and a half *after* Leandra and Amanda mediated and entered into a settlement agreement. It was settled and dismissed before the hearing on the motion to disqualify. Amanda fails to show how any disqualification of Leandra's attorneys would void the settlement agreement that she signed. Even if there was error in denying the motion to disqualify (an issue which we do not reach), it would not amount to error that "probably caused the rendition of an improper judgment" and so was not reversible. Tex. R. App. P. 44.1 (a)(1).

We overrule issue five.

## CONCLUSION

"Estate property" has a clear, unambiguous meaning in Texas law and does not include a surviving spouse's half interest in community property. The probate court properly interpreted the parties' settlement agreement to divide the estate after Leandra's portion of the community property is removed. Neither the attorneys' emails discussing settlement nor their role as defendants in the dismissed fraud suit affect the interpretation of the unambiguous settlement agreement. We affirm the probate court's order.

JEFF ALLEY, Chief Justice

April 15, 2024

Before Alley, C.J., Palafox and Soto, JJ.