IN THE
TENTH COURT OF APPEALS



No. 10-16-00088-CV

IN THE INTEREST OF
J.R., S.R., C.R., AND C.R., CHILDREN

From the County Court at Law
Bosque County, Texas
Trial Court No. CV14255

OPINION

Raising four issues each, appellants, Earl and Cathy, challenge the trial court's order terminating their parental rights to J.R., S.R., C.R., and C.R.[1] Because we overrule all of the issues raised by both appellants, we affirm.

## I.    BACKGROUND

Earl and Cathy are the biological parents of four children, who, at the time of trial, were the following ages:  fifteen-year-old J.R., thirteen-year-old S.R., nine-year-old C.R.,

---

[1] For purposes of clarity, we use fictitious names to refer to the mother and father of the affected children.  Specifically, Earl will be used as the name for the father, and Cathy will be used as the name for the mother.

and seven-year old C.R. Earl and Cathy also have two adult children who are not the subject of this lawsuit.

In August 2014, the Department of Family and Protective Services filed its original petition for termination of the parental rights of both Earl and Cathy as to J.R., S.R., C.R., and C.R. Specifically, the Department sought to terminate Earl and Cathy's parental rights on numerous grounds, including those in section 161.001(b)(1)(D) and (O) and section 161.003(a) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (O), 161.003(a) (West Supp. 2016).

After a trial, the jury found by clear and convincing evidence that termination of the parent-child relationship between Earl and Cathy and their four minor children was in the best interest of the children and that Earl and Cathy both engaged in acts or conduct that satisfied several of the alleged statutory grounds for termination. The trial court's order of termination reflects that the jury concluded that the Department established by clear and convincing evidence that Earl and Cathy both: (1) "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children"; (2) "failed to comply with the provisions of a court order that specifically established the actions necessary for the mother [and father] to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent

under Chapter 262 for the abuse or neglect of the children"; and (3) "[have] a mental or emotional illness or mental deficiency that renders [them] unable to provide for the physical, emotional, and mental needs of the children and will continue to render [them] unable to provide for the children's needs until the 18th birthday of the children despite at least 6 months of reasonable efforts to return the children to the parent." *See id.* §§ 161.001(b)(1)(D), (O), 161.003(a).

At the conclusion of the trial, Cathy filed a motion for new trial challenging the jury's findings; however, Earl did not. In any event, both Earl and Cathy filed separate notices of appeal.

## II.    STANDARD OF REVIEW

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397, 71 L. Ed. 2d 599 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002); *see In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) ("But this Court has stated that 'the rights of natural parents are not absolute; protection of the child is paramount. . . . The rights of parenthood are accorded only to

those fit to accept the accompanying responsibilities.'" (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993) (citations omitted))). In a termination case, the petitioner seeks not only to limit parental rights but to eradicate them permanently by divesting the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX. FAM. CODE ANN. § 161.206(b) (West 2014); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *See Holick*, 685 S.W.2d at 20-21.

In an involuntary termination proceeding brought under section 161.001 of the family code, the Department must establish: (1) at least one ground under subsection (b)(1) of section 161.001; and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes

for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting the standards for termination and modification).

In evaluating the evidence for legal sufficiency in parental-termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all contrary evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* In other words, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.* We cannot weigh witness-credibility issues that depend on the appearance and demeanor of the witnesses, for that is within the province of the factfinder. *Id.* at 573-74. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are reasonable. *Id.* at 573.

In reviewing for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent committed the predicate ground alleged and that the termination of the parent-child relationship would be in the

best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(1); *see In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief in the truth of its finding, then the evidence is factually insufficient. *In re H.R.M.*, 209 S.W.3d at 108.

### III. CATHY'S APPELLATE ISSUES

#### A. The Predicate Grounds and Best-Interest Finding

In her first issue, Cathy argues that the evidence is insufficient to establish both the underlying predicate grounds for termination and that termination is in the best interest of the children. We disagree.

In the instant case, the jury concluded the Department established that Cathy knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the children's physical or emotional well-being, among other things. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). To endanger means to expose to loss or injury; to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam); *see also In re I.R.K.-N.*, No. 10-13-00455-CV, 2014 Tex. App. LEXIS 5310, at *11 (Tex. App.—Waco May 15, 2014, pet. denied) (mem. op.). "The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred

from parental misconduct. " *In re I.R.K.-N.*, 2014 Tex. App. LEXIS 5310, at *11 (citing *Boyd*,

727 S.W.2d at 533).

> When termination of parental rights is based on section D, the endangerment analysis focuses on the evidence of the child's physical environment, although the environment produced by the conduct of the parents bears on the determination of whether the child's surroundings threaten his well-being. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Section D permits termination if the petitioner proves parental conduct caused a child to be placed or remain in an endangering environment. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

> It is not necessary that the parent's conduct be directed towards the child or that the child actually be injured; rather, a child is endangered when the environment creates a potential for danger which the parent is aware of but disregards. *In re S.M.L.*, 171 S.W.3d at 477. Conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *Id.* (citing *In re Tidwell*, 35 S.W.3d 115, 119-20 (Tex. App.—Texarkana 2000, no pet.) ("[I]t is not necessary for [the mother] to have had certain knowledge that one of the [sexual molestation] offenses actually occurred; it is sufficient that she was aware of the potential for danger to the children and disregarded that risk by . . . leaving the children in that environment.")). In considering whether to terminate parental rights, the court may look at parental conduct both before and after the birth of the child. *Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Section D permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d at 367.

*Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied);

*see, e.g., In re I.R.K.-N.*, 2014 Tex. App. LEXIS 5310, at **11-13.

Allowing a child to live in unsanitary conditions can support a finding that a

parent has endangered the child's mental and physical well-being. *See, e.g., In re M.C.*,

917 S.W.2d at 270 (noting evidence of cockroach infestation, trash, and children eating

food off the ground supported a finding of endangerment); *In re A.C.B.*, 198 S.W.3d 294, 299 (Tex. App.—Amarillo 2006, no pet.) (upholding a finding of termination based on evidence of dirty diapers, trash, feces on the wall, and dirty clothing mingled on the floor); *Phillips v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 348, 354 (Tex. App.—Austin 2000, no pet.) (affirming a finding of termination based on subsection D and noting that the children "suffered from chronic outbreaks of head lice" and were dirty and disheveled). "Although there generally must be evidence that these unsanitary conditions were persistent rather than isolated, a parent's willingness to subsequently clean the home 'does not controvert the evidence that [the parent] had exposed the [child] to conditions which endangered [his] well-being.'" *D.K. v. Tex. Dep't of Family & Protective Servs.*, No. 03-13-00816-CV, 2014 Tex. App. LEXIS 5032, at **11-12 (Tex. App.—Austin May 9, 2014, no pet.) (mem. op.) (quoting *In re A.C.B.*, 198 S.W.3d at 299).

At trial, Cathy admitted that she had been working with the Department for almost twenty years and that the Department "has come in multiple times about dangers to the kids." Children's Protective Services conservatorship worker Sheila Tatum testified that the Department had removed Cathy's children seven times during those years and opened nine cases in which services were provided to the family. These cases typically involved physical neglect and neglectful supervision. Tatum noted that Cathy repeatedly participates in services and maintains the home while a case remains open, but then reverts to her prior lifestyle once the case is closed.

At the time of removal, the home environment included the following: (1) numerous animals freely entering and leaving the home through broken or open windows; (2) animal or human feces on the floor; (3) no electricity in the home, except for an extension cord that had been run into the home and that was described as a fire hazard; (4) cockroaches and other bugs throughout the house; (5) accumulated trash heaped in piles or strewn about the house that had an odor suggesting that animals used it for a litter box; (6) bags of laundry and trash mixed together on the back porch; (7) a non-functioning toilet that contained fecal matter and urine; (8) urine on the floor around the toilet; (9) holes in the floor where the wood had rotted; (10) brown smudges on the wall of the children's bedrooms that were suspected to be either dirt or feces; (11) a sheet-less mattress for the children to sleep on that was stained with urine and smelled foul; (12) the floor and walls of the house had excess grime; (13) cockroaches in the food lying on the counter; (14) old, rotting food intermingled with food being used by the family, including food that Cathy intended to serve the family for dinner on the night of the removal; (15) a dirty refrigerator and freezer with only inedible food; and (16) a pantry containing only two cans of food for the entire family.

Kim Edwards, the principal at Meridian Elementary, testified that the children went to school virtually every day "[u]nkempt, not cared for, constantly had head lice. I know through the years there were numerous reports that I made, as well as teachers, that were CPS, concern for their safety and their well-being." Edwards noted that the

children "smell[ed] oftentimes" from poor hygiene and a lack of bathing for several days. Cathy's sister, Mandy W., also testified that: "Sometimes their clothes would be extremely too small or, you know, they would be dirty. I mean, I know kids get dirty. My kids get dirty all the time, they go outside and play. Head lice constantly."

Tatum also testified about the special needs of the children. Two of the children were overweight, and one of the children suffered from Type II diabetes that was untreated and resulted in a three-inch ring around the child's neck. And despite the diabetes issue, Tatum recalled that Cathy insisted on bringing junk food for the children when participating in visitations. The evidence also revealed that another child had caps all over his front teeth because they were rotten. None of the children knew how to brush their teeth, and one of the children was afraid to get in the bathtub. Two of the female children informed Tatum that they did not clean their hair, had never worn pajamas, had never wiped themselves after using the restroom, and had never used feminine-hygiene products despite the need. Additionally, witnesses stated that one of the children is autistic and has Attention Deficit Hyperactivity Disorder ("ADHD"). This child "got out" of Cathy's house on multiple occasions and, on one occasion, crossed a freeway by himself. Dr. Janis Petronis, the court-appointed special advocate for the children in this case, stated that the autistic child had not been taught discipline and was prone to "violent outbursts" when placed in a structured environment following removal.

Based on the evidence mentioned above, we conclude the evidence is sufficient to support a firm conviction or belief that Cathy exposed the children to unsanitary conditions in their home which endangered the children's well-being. *See In re M.C.*, 917 S.W.2d at 270; *In re A.C.B.*, 198 S.W.3d at 299; *Phillips*, 25 S.W.3d at 354; *see also D.K.*, 2014 Tex. App. LEXIS 5032, at **11-12. Accordingly, we hold that the evidence is sufficient to establish the predicate termination ground under section 161.001(b)(1)(D).[2] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *see also In re J.L.*, 163 S.W.3d at 84; *Boyd*, 727 S.W.2d at 533. We now turn to the best-interest finding.

In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). These factors are: (1) the child's wishes; (2) his emotional or physical needs now and in the future; (3) emotional or physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) programs available to help those parties; (6) plans for the child by the parties seeking custody; (7) the stability of the proposed placement; (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper; and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The Department need

---

[2] Because only one statutory predicate ground is necessary to support termination of parental rights when there is a finding of best interest, we need not address Cathy's complaints with respect to the remaining termination grounds. *See* TEX. R. APP. P. 47.1.; *see also In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.")..

not prove all nine *Holley* factors as a "condition precedent" to termination; the absence of some factors does not bar the factfinder from finding that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. And while no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet).

Here, the record evidence demonstrates that the children are thriving in their current placements. The children's grades, hygiene, health, and emotional well-being have improved since being removed from Cathy's home. Witnesses testified that all of the children are adoptable and that the current placement for three of the children is seeking to adopt. And though one of the children indicated a desire to go back and live with Cathy, Dr. Petronis testified that it would be emotionally harmful to that child if she returned to Cathy's home. Tatum echoed Dr. Petronis's sentiment when she said, "No question in my mind they should remain where they are at . . . this time." In addition, we are mindful of the fact that Cathy has a history with the Department dating back almost twenty years with seven removals for physical neglect and neglectful supervision and that the home environment at the time of removal included roaches, trash, feces, dirt, and stench. Moreover, all of the children suffered from poor hygiene and head lice.

Furthermore, one of the children has ADHD and autism, which requires constant supervision and a clean and structured environment—things that were not provided in

Cathy's house. In fact, Pedro Gonzalez, the Executive Director for Habilitative Homes, testified that: "Because he—because of his autism, he does have a lot of repetitiveness in things that he does. He likes to organize things a certain way and if it is not, then it throws him off and he does start having behavioral issues." Additionally, one of the children has Type II diabetes that was untreated in Cathy's house, but it is now being treated in the current placement. The evidence also indicates one of the children had rotten teeth and that none of the children knew how to brush their teeth or engage in basic hygienic practices while in Cathy's house.

Psychologist Dr. James Shinder testified that Cathy has an intellectual disability and that it would be "literally impossible" for her to care for children with special needs. Dr. Shinder also noted that Cathy repeatedly failed to accept that bathing the children was necessary, despite information to the contrary. Dr. Shinder opined that Cathy's refusal to bathe the children was "intentional." And while the record demonstrates that Cathy made attempts to comply with Department recommendations for a healthy home environment, Tatum recounted that a surprise home visit revealed unhealthy living conditions, which evidenced Cathy's habit of reverting to her prior lifestyle once the case closed.

And finally, Cathy was provided numerous services by the Department, but she was unable to consistently apply the skills learned in the classes. Nevertheless, Cathy asserts that her service plan lacked appropriate modifications and that the Department

failed to utilize all available programs due to her intellectual disability. However, it is noteworthy that Cathy fails to identify any specific modifications or programs that could have assisted her.

Based on the foregoing, we conclude that the evidence is sufficient to support a finding that termination of Cathy's parental rights to all four children is in the best interest of the children. *See Holley*, 544 S.W.2d at 371-72; *see also In re C.H.*, 89 S.W.3d at 27; *In re J.O.C.*, 47 S.W.3d at 115. We overrule Cathy's first issue.

### B. The Admission of Dr. Shinder's Testimony

In her second issue, Cathy alleges that the trial court committed reversible error by admitting Dr. Shinder's testimony regarding parenting and psychological assessments of both Earl and Cathy. Cathy argues that Dr. Shinder failed to establish the reliability of the methodology underlying his assessments.

At the outset, we note that Cathy relies heavily on this Court's decision in *In re J.B.*, wherein a prior composition of this Court concluded that similar testimony from Dr. Shinder in another termination case was inadmissible because Dr. Shinder "offered no specific, independent sources to support the reliability of his methodology" in light of the *Robinson* factors.[3] 93 S.W.3d 609, 625-26 (Tex. App.—Waco 2002, pet. denied). However,

---

[3] The non-exclusive *Robinson* factors used for assessing reliability are as follows:

(1) "the extent to which the theory has been or can be tested";

(2) "the extent to which the technique relies upon the subjective interpretation of the expert";

Chief Justice Gray dissented to the majority's conclusion that such testimony should be excluded, arguing that Dr. Shinder's testimony involved the "soft" sciences and that the Court of Criminal Appeals' *Nenno* factors, rather than the *Robinson* factors, should be applied. *See id.* at 628-35 (Gray, C.J., dissenting); *see also Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999) (noting that when measuring the reliability of an expert's opinion in fields within the soft sciences, we consider whether: "(1) the field of expertise is a legitimate one; (2) the subject matter of the expert's testimony is within the scope of that field; and (3) the expert's testimony properly relies upon the principles involved in that field of study").

Subsequently, in 2010, this Court, with a different composition, issued a unanimous opinion in which the *Nenno* factors were applied in testing the reliability of a soft-science expert witness in a termination case. *See In re S.R.*, No. 10-10-00063-CV, 2010 Tex. App. LEXIS 9681, at **4-6 (Tex. App.—Waco Dec. 8, 2010, pet. denied) (mem. op.). However, the *S.R.* opinion did not reference this Court's prior *J.B.* opinion. *See generally*

---

(3) "whether the theory has been subjected to peer review and/or publication";

(4) "the technique's potential rate of error";

(5) "whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and"

(6) "the non-judicial uses which have been made of the theory or technique."

*E.I. du Pont de Nemours v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995).

*id.* Nevertheless, a fair reading of this Court's more recent pronouncement in *S.R.* yields a finding that we apply the *Nenno* factors to evaluate soft-science testimony in civil cases. *See id.* at **4-6. As such, it would appear that *S.R.* effectively overruled *J.B.* with respect to the analysis used to evaluate soft-science testimony in civil cases.

We also note that since this Court's 2002 *J.B.* opinion, several of our sister courts have concluded that the *Nenno* framework should be employed to evaluate soft-science testimony in civil cases, though the Texas Supreme Court has not directly addressed the application of *Nenno* in all civil cases involving the soft sciences. *See Taylor v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 650-51 (Tex. App.—Austin 2005, pet. denied); *In re A.J.L.*, 136 S.W.3d 293, 298 (Tex. App.—Fort Worth 2004, no pet.) (applying the *Nenno* framework in a parental-termination case); *see also In re Polk*, No. 09-10-00127-CV, 2011 Tex. App. LEXIS 1323, at **11-12 (Tex. App.—Beaumont Feb. 24, 2011, pet. denied) (mem. op.) (recognizing that some cases are not susceptible to scientific analysis, and thus, the *Robinson* factors may not apply; and that the *Nenno* factors have been applied to analyze testimony related to soft sciences in civil cases); *In re G.B.*, no. 07-01-0210-CV, 2003 Tex. App. LEXIS 8737, at **5-6 (Tex. App.—Amarillo Oct. 10, 2003, no pet.) (mem. op.) (applying *Nenno* in a parental-termination case); *but see In re M.P.A.*, 364 S.W.3d 277, 288-89 (Tex. 2012) (declining to apply the *Nenno* factors in a juvenile-delinquency case after factually-distinguishing the expert testimony in *Nenno* from the case at bar).

A trial court's decision to admit expert testimony is reviewed for an abuse of discretion. *See E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also In re S.R.*, 2010 Tex. App. LEXIS 9681, at *4. "A trial court abuses its discretion when it rules without regard to guiding rules and principles of law." *In re S.R.*, 2010 Tex. App. LEXIS 9681, at *4 (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). "The testimony of a qualified expert is generally admissible when scientific, technical, or other specialized knowledge will assist the fact finder in understanding the evidence, or to determine a fact issue." *Id.* (citing TEX. R. EVID. 702). "The trial court has the gatekeeper function of ensuring that expert testimony is based on a reliable foundation, and is relevant to the issues in the case." *Id.* at **4-5 (citing *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 728 (Tex. 1998)).

When measuring the reliability of an expert's opinion in non-scientific cases, such as the one here, we consider the following: (1) whether the field of expertise is a legitimate one; (2) whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether the expert's testimony properly relies upon the principles involved in that field. *Id.* at *5 (citing *Taylor v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 650 (Tex. App.—Austin 2005, pet. denied)); *see Nenno*, 970 S.W.2d at 561.

At trial, Dr. Shinder testified that he earned a Ph.D. in psychology in 1973 and a master's degree in public health in 1979. He has worked in the field of psychology on a full-time basis since 1970. Dr. Shinder noted that he was previously licensed in five areas

of practice; however, he is now licensed in three areas of psychology in anticipation of retirement. Dr. Shinder provides psychological services and analysis and parenting assessments for the Department on a contract basis, which comprises approximately half of his practice.

With respect to Cathy and Earl, Dr. Shinder stated that he conducted comprehensive evaluations on both parents, which involved psychological assessments and determinations of their parenting abilities. According to Dr. Shinder, it is normal practice to choose a unique set of formal tests based on the individual testing subject when conducting an evaluation. Each test is professionally manufactured and validated in the field for as many as one hundred years. Formal testing may include areas pertaining to problem-solving, anxiety, and anger. In addition, the evaluation involves taking a lengthy personal history of the testing subject.

Dr. Shinder also incorporates information gathered from other psychological services provided to the individual in his assessments. Dr. Shinder opined that he has worked with Earl and Cathy for approximately ten years and that he previously analyzed them both in 2004. In this case, Dr. Shinder spent a minimum of ten hours with Earl and Cathy in the administration of the psychological evaluation. He also taught a sixteen-hour protective-parenting course that Earl and Cathy attended. Moreover, Dr. Shinder provided Earl and Cathy with individual and couple's counseling sessions.

Based on the foregoing evidence, we cannot say that the trial court abused its discretion in concluding that Dr. Shinder's evaluation of Earl and Cathy properly relied on principles in the field of psychology and that Dr. Shinder's experience in the field was sufficient to render a psychological opinion about the mental capacities and abilities of Earl and Cathy to parent their children. *See Taylor*, 160 S.W.3d at 650; *see also In re S.R.*, 2010 Tex. App. LEXIS 9681, at \*5. We overrule Cathy's second issue.

## C. Cathy's Motion to Exclude Evidence

In her third issue, Cathy contends that the trial court erred in denying her motion to exclude evidence concerning a 2004 sexual-abuse allegation.

We review a trial court's evidentiary ruling for an abuse of discretion. *Whirlpool v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009). A trial court abuses its discretion when it misapplies the law to the established facts of the case. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). "A trial court has no discretion to determine what the law is or in applying the law to the facts and, consequently, the trial court's failure to analyze or apply the law correctly is an abuse of discretion." *In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 483 (Tex. 2001). If the trial court abuses its discretion in an evidentiary ruling, the complaining party must still show harm on appeal to warrant reversal. *See* TEX. R. APP. P. 44.2(a); *see also Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009). Harmful error is error that "probably cause the rendition of an improper judgment." TEX. R. APP. P. 44.1(a); *see McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992). In other words,

"[w]e review the entire record, and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted." *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).

Prior to trial, Cathy filed a motion to exclude evidence concerning a 2004 sexual-abuse allegation that resulted in no criminal charges being filed and the return of the children. After a hearing, the trial court denied Cathy's request; however, the trial judge indicated that a motion in limine would be considered. Cathy subsequently filed a motion in limine regarding other issues but made no reference to the 2004 sexual-abuse allegation.

In any event, during the testimony of Tatum, the Department began a question with: "There was some sexual abuse allegations made at the hands of Mr. ––." Cathy and Earl objected, and the trial court denied the admission of this evidence by stating, "[y]ou are not going there." Because the trial court excluded the exact evidence during trial that Cathy sought to exclude with her pre-trial motion to exclude, we cannot say that the denial of her motion to exclude was harmful or probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *McCraw*, 828 S.W.2d at 757; *see also Armstrong*, 145 S.W.3d at 144. Accordingly, we overrule her third issue.

**D. The Recusal of the Former Trial Judge**

In her fourth issue, Cathy complains about the timing of the former trial judge's recusal. In particular, Cathy asserts that Judge David Christian had previously

represented the Department as the Bosque County Attorney in a 2007 case in which the children in this case were removed from Earl and Cathy's home and that Judge Christian denied Cathy's "Motion for Monitored Return of the Children" prior to recusing himself.

This Court is prohibited from deciding moot controversies. *See Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999) (citing *Camarena v. Tex. Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988)); *see also Holmes v. Jaafreh*, No. 10-11-00320-CV, 2013 Tex. App. LEXIS 6647, at *3 (Tex. App.—Waco May 30, 2013, no pet.) (mem. op.). "An issue is moot if either party seeks a judgment on a controversy that does not really exist or a party seeks a judgment which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy." *Seals v. City of Dallas*, 249 S.W.3d 750, 754 (Tex. App.—Dallas 2008, no pet.) (citing *Young v. Young*, 168 S.W.3d 276, 287 (Tex. App.—Dallas 2005, no pet.)); *see Wassmer v. Hopper*, 463 S.W.3d 513, 527-28 (Tex. App.—El Paso 2014, no pet.).

Here, Cathy complains that the timing of Judge Christian's recusal resulted in bias in the judge's denial of her Motion for Monitored Return. However, because Cathy's parental rights to the children have been terminated by a different judge, and because any rulings made prior to the termination trial can no longer have any legal effect in this case, we therefore conclude that this complaint is moot. *See Seals*, 249 S.W.3d at 754; *Young*, 168 S.W.3d at 287; *see also Wassmer*, 463 S.W.3d at 527-28. And because we are prohibited from deciding moot controversies, we dismiss Cathy's fourth issue. *See Jones*,

1 S.W.3d at 86; *Camarena*, 754 S.W.2d at 151; *see also Holmes*, 2013 Tex. App. LEXIS 6647, at *3.

## IV.  EARL'S APPELLATE ISSUES

### A.  Factual-Sufficiency of the Evidence Supporting the Predicate Grounds and Best-Interest Finding

In his first two issues, Earl contends that the evidence supporting the underlying predicate grounds for termination and best-interest finding is not supported by factually-sufficient evidence.  Generally, if a party fails to preserve an issue for appeal, this Court should not address the merits of that issue.  *See* TEX. R. APP. P. 33.1; *see also In re J.F.C.*, 96 S.W.3d at 304-05 (noting that an appellate court's refusal to consider unpreserved errors in parental-termination cases, except in cases of fundamental error, serves the Legislature's intent that such cases be expeditiously resolved).  This Court, as well as numerous other Texas courts, have held that a party must file a motion for new trial to preserve a factual-sufficiency challenge for appeal.  *See In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003); *In re A.M.*, 385 S.W.3d 74, 79 (Tex. App.—Waco 2012, pet. denied); *In re D.J.J.*, 178 S.W.3d 424, 427 (Tex. App.—Fort Worth 2005, no pet.); *In re J.M.S.*, 43 S.W.3d 60, 62 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *see also In re T.L.P.*, No. 09-13-00220-CV, 2013 Tex. App. LEXIS 13513, at *3 (Tex. App.—Beaumont Oct. 18, 2013, no pet.) (mem. op.); *Mason v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00205-CV, 2012 Tex. App. LEXIS 4012, at *20 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.).

Despite Earl's assertions to the contrary, a review of the record shows that Earl did not file a motion for new trial in this case. We therefore conclude that Earl failed to preserve the factual-sufficiency complaints made in his first two issues. *See* TEX. R. CIV. P. 324(b)(2), (3); *In re M.S.*, 115 S.W.3d at 547; *In re A.M.*, 385 S.W.3d at 79; *In re D.J.J.*, 178 S.W.3d at 427; *In re J.M.S.*, 43 S.W.3d at 62; *see also In re T.L.P.*, 2013 Tex. App. LEXIS 13513, at *3; *Mason*, 2012 Tex. App. LEXIS 4012, at *20. Accordingly, we overrule Earl's first two issues.

## B. Admission of Dr. Shinder's Testimony

In his third issue, Earl contends that the trial court erred by allowing the testimony of Dr. Shinder over objection. However, in arguing that he believes that Dr. Shinder's conclusions are not based on reliable methodology, Earl "refers to [Cathy's] Appeal analysis of this issue and adopts it in its entirety." Given that we have already rejected Cathy's complaints about Dr. Shinder's testimony, we overrule Earl's third issue.

## C. Denial of a Motion to Exclude

In his fourth issue, Earl complains that the trial court erred in denying a motion to exclude evidence. In the summary-of-the-argument section of his brief, Earl contends that his fourth "argument is that the Trial Judge sitting on this case abused his discretion in not obtaining a licensed interpreter for Appellant." In the argument section of his brief, Earl's entire fourth issue is comprised of the following: "APPELLANT REFERS THIS HONORABLE COURT TO THE DISCUSSION ON ABUSE OF DISCRETION WHICH

HAS BEEN PRESENTED IN ISSUE NUMBER THREE." There is no citation to the record or law in his fourth issue. *See* TEX. R. APP. P. 38.1(i).

Nothing in Earl's third or fourth issues pertain to the trial court's purported failure to obtain a licensed interpreter for him. Furthermore, as noted above, Earl's third issue pertained to the trial court's admission of Dr. Shinder's testimony in regard to psychological evaluations and parenting assessments done on Cathy and Earl. Because we have overruled Earl's third issue, and because Earl's fourth issue is inadequately briefed, we overrule Earl's fourth issue. *See id.*

## V.  CONCLUSION

Having overruled all issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed August 31, 2016
[CV06]

